IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARY REEDER                                                                                    PLAINTIFF

v.                                        CIVIL NO. 04-3060

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                                           DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Mary Reeder brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim period of disability and disability insurance benefits under the provisions of Title II of the Social Security Act (Act).

**Procedural Background:**

The application for DIB presently before this court was filed on March 27, 2003, alleging an inability to work since May 15, 1998, due three ruptures cervical discs, degenerative disc disease, chronic pain and reflex sympathetic dystrophy of the left foot. (Tr. 51-54). Plaintiff maintained insured status through March 31, 2000. (Tr. 113). An administrative hearing was held on March 5, 2004. (Tr. 320-359). Plaintiff was present and represented by counsel.

By written decision dated April 27, 2004, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 22). However, after reviewing all of the evidence presented, he determined that as of March 31, 2000, plaintiff's date last insured, she

1

maintained the residual functional capacity (RFC) to perform a significant range of light work. More specifically, the ALJ found plaintiff could lift a maximum of twenty pounds occasionally, ten pounds frequently; could stand and/or walk up to six hours in an eight-hour workday; could sit for up to six hours in an eight-hour owrkday; could push and pull with those same limitations; and could frequently perform overhead reaching. With the help of vocational expert testimony, the ALJ determined that prior to her date last insured plaintiff was able to perform her past relevant work as an insurance agent. (Tr. 22).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on July 19, 2004. (Tr.4-7). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties have submitted appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. #'s 5,6).

**Evidence Presented:**

At the time of the administrative hearing on March 5, 2004, plaintiff was sixty-two years of age and obtained two years of college education. (Tr. 329-330).The record reflects plaintiff's past relevant work consists of work as an insurance agent. (Tr. 331). Plaintiff testified that she last worked part-time in her husband's office until May of 1998, when he closed his practice. (Tr. 331, 351).

Plaintiff testified that in May of 1998, she had two main problems and some associated attending problems. (Tr. 333). Her main problems were with her left foot and her cervical spine. (Tr. 333-334). Plaintiff explained that she had a bone spur removed from her foot in 1994, and

2

while in the operating room contracted osteomyelitis which turned into reflex sympathetic dystrophy (RSD). Plaintiff testified that she was lucky because this problem was caught early so she was able to keep her foot and to "break the pain chain" with rehabilitation and steroid injections. (Tr. 334).

Plaintiff testified that the combination of her two problems prevented her from seeking employment outside of her husband's office. (Tr. 334).

With regard to functional problems, plaintiff testified prior to March 31, 2000, she was not able to stand for long periods of time and often had to elevate her foot at the end of the day because of swelling. (Tr. 335). Prolonged standing and sitting would also cause pain in her neck.(Tr. 335, 337). Plaintiff testified that her cervical problems also caused pain when she moved, especially in her arms and hands. (Tr. 335). Due to her limited motion, plaintiff testified she had difficulty driving a car. (Tr. 336). Plaintiff testified that use of her right arm was further impaired by nerve damage. (Tr. 336-337). Plaintiff underwent cervical spine surgery three weeks prior to the hearing. (Tr. 328).

Plaintiff further testified the muscle spasms below her shoulders also caused problems. (Tr. 339). To stop the spasms, plaintiff testified she would take medication. After about forty-five minutes the spasms would stop but the medication would make her very sleepy. (Tr. 339). Plaintiff testified that the medication she was taking at the time of the hearing was the same, but in different doses, as the medication she was making in 1998. Plaintiff reported her medication made her extremely sleepy. (Tr. 339).

Dr. O. William Reeder, Jr., plaintiff's husband, testified that between May of 1998, and March of 2000, he observed plaintiff in a depressive state. (Tr. 351). That is why he thought

3

moving to California might be good for plaintiff. (Tr. 352). However, once they moved she was really unable to leave the house so they decided to move to Arkansas. (Tr. 352).

Ms. Tanya Rutherford Owen, a vocational expert, testified plaintiff's past relevant work as an insurance agent is considered light, skilled work. (Tr. 357). After listening to the ALJ's hypothetical question (Tr. 355), Ms. Owen testified that the hypothetical individual would be able to perform her past work. If the limitation of only occasional reaching was added to the hypothetical, Ms. Own testified that the hypothetical person would not be able to perform her past work. (Tr. 358). After listening to plaintiff's counsel's hypothetical question, Ms. Owen testified that the hypothetical person would not be able to perform any light jobs. (Tr. 359).

The pertinent medical evidence in this case reflects the following. In 1993, plaintiff sought treatment from Dr. S.J. LoCoco for lower back pain after she fell in her yard. (Tr. 269, 247). Plaitiff also sought treatment for wrist pain and cervical pain. (Tr. 269-270). Dr. LoCoco reported x-rays taken of plaintiff's cervical spine revealed a complete loss of cervical lordosis with degenerative disc disease at C4, C5 and C6 and bilateral foraminal encroachment at C6. (Tr. 270). Cervical traction was recommended. In May of 1993, a MRI of plaintiff's cervical spine showed degenerative disc disease which was consistent with the x-rays but no evidence of herniated nucleus pulposus.

In 1994, plaintiff underwent a bunionectomy on her left foot. (Tr. 157). Postoperatively she suffered a staphylococcus wound infection, which subsequently turned into osteomyelitis. Plaintiff was treated with intravenous antibiotics and in June 0f 1994, Dr. Frank Rabito noted plaintiff moved her ankle well and her condition continued to improve. (Tr. 121). Plaintiff also developed reflex sympathetic dystrophy of her left foot and was treated with a series of epidural

4

blocks and intensive physical therapy. (Tr.169-170, 174-176,179-182, 189-205, 207-210, 214-217, 219-221, 225-227 ). On October 17, 1994, Dr. Rabito noted plaintiff's left foot was normal in appearance with no evidence of heat or redness. (Tr. 119). Plaintiff had good range of motion of her ankle and toes. At that time, plaintiff reported that she liked to entertain but could not wear shoes for long periods of time and that the Relefen caused GI upset. Plaintiff also advised Dr. Rabito that she did not wish to have any pharmacologic intervention. Dr. Rabito discharged plaintiff from his care with instructions to return to the clinic on an as needed basis.

After experiencing extensive neck pain with symptomatology in both upper extremities, plaintiff underwent a MRI of the cervical spine on October 25, 1996. (Tr. 101A, 276). The MRI showed chronic herniation of disc material at C4-5, C5-6 and C6-7 with hypertrophic osteophyte formation causing central and bilateral lateral recess stenosis and a Type IIa protruding herniation at the C3-4 level in the midline.

Plaintiff sought treatment from Dr. LoCoco in March of 1997, through the end of that year. Dr. LoCoco prescribed Tylenol #4, Robaxin and Soma for plaintiff's pain complaints. In August of 1997, Dr. LoCoco added Empirin #4 to plaintiff's medications. (Tr. 266). In October of 1997, Dr. LoCoco noted plaintiff needed to undergo surgery.

Dr. LoCoco saw plaintiff seven times between April of 1998, and October of 2000. (Tr. 264-266). During this time plaintiff complained of neck pain. Plaintiff did complain of numbness in her right fingers in April of 1998, and pain in her left shoulder and upper arm in October of 2000. Dr. LoCoco recommended plaintiff undergo surgery due to a HNP but plaintiff opted not to undergo the procedure. (Tr. 265).

AO72A
(Rev. 8/82)

After March of 2000, plaintiff continued to seek treatment for her neck and extremities. (Tr. 101C , 261-264, 282-285, 287-288, 291-294, 296-297299, 302-, 302-304, 306-307). In January of 2003, plaintiff presented to Dr. Dan Bell for the first time. (Tr. 285). Dr. Bell noted plaintiff had a 4-level cervical impingement and manages this with Tylenol #4 and Empirin #4. At this time, plaintiff reported she was happy with her pain control and was not interested in a pain referral. In February of 2003, plaintiff underwent a MRI of the cervical spine which revealed plaintiff severed chronic degenerative disc and joint changes at C4-5, C5-6, C6-7, the most severe at C5-6; moderate-severe central and lateral canal stenosis related to broad-based disc bulges; posterior vertebral body ostheophytes and posterior element of bony hypertrophy; spinal canal stenosis and degenerative changes slightly worse at C5; a small superimposed acute component to the disc bulge at C5-6; and loss of normal cervical lordosis with apex at C5 related to the chronic degenerative changes. (Tr. 101C-101D). Plaintiff also sought treatment for foot pain in September of 2001, August of 2002, and September of 2002, and was referred to a podiatrist for an infection in November of 2001. (Tr. 261-263).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists

6

in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)- (f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work

7

experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

**Discussion:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on March 31, 2000. (Tr. 13, 325). Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of May 15, 1998, her alleged onset date of disability, through March 31, 2000, the last date she was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

Plaintiff contends the ALJ erred in discounting plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a

AO72A
(Rev. 8/82)

claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated plaintiff's subjective complaints. Although plaintiff contends that her alleged cervical spine problems, degenerative disc disease and left foot pain were disabling prior to the expiration of her insured status, the evidence of record does not support this conclusion. The medical evidence indicates plaintiff underwent a bunionectomy in 1994. Postoperatively she suffered a staphylococcus wound infection, which subsequently turned into osteomyelitis which treated with intravenous antibiotics  Plaintiff also developed reflex sympathetic dystrophy of her left foot and was treated with a series of epidural blocks and intensive physical therapy. On October 17, 1994, Dr. Rabito noted plaintiff's left foot was normal in appearance with no evidence of heat or redness. Plaintiff had good range of motion of her ankle and toes. At that time, plaintiff reported that she liked to entertain but could not wear shoes for long periods of time and that the Relefen caused GI upset. Plaintiff also advised Dr. Rabito that she did not wish to have any pharmacologic intervention. Dr. Rabito discharged plaintiff from his care with instructions to return to the clinic on an as needed basis. There is no indication that plaintiff complained of foot pain again until September of 2001, eighteen months after her insured status had expired. *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003)

(holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Based on the current record, we find substantial evidence supporting the ALJ's determination that plaintiff's foot problems were not disabling.

With regard to plaintiff's ruptured cervical discs and degenerative dis disease, the ALJ points out that during the relevant time period plaintiff responded well to conservative treatment. *See Gowel*, 242 F.3d at 796 (holding fact that physician prescribed conservative treatment weighed against plaintiff's subjective complaints). Plaintiff also reported in January of 2003, that she was happy with her pain control and was not interested in a pain referral. We note, an impairment which can be controlled by treatment or medication is not considered disabling. *See Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (citations omitted). There is evidence that plaintiff did undergo surgery in 2004, but this was almost four years after plaintiff's insured status had expired. While plaintiff may have experienced some degree of pain, the medical evidence indicates that her condition was not of a disabling nature prior to her date last insured. *See Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

With regard to plaintiff's allegations of disabling depression, the ALJ noted plaintiff never sought treatment from a mental health professional. *See Jones v. Callahan*, 122 F.3d 1148, 1153 (8th Cir. 1997) (ALJ properly concluded claimant did not have a severe mental impairment, where claimant was not undergoing regular mental-health treatment or regularly taking psychiatric medications, and where his daily activities were not restricted from emotional causes). Furthermore,

in January of 2003, plaintiff reported to Dr. Bell that she was not depressed. Based on the record, we find substantial evidence supporting the ALJ's determination that plaintiff did not have a severe mental impairment.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. At the March 2004, administrative hearing, plaintiff testified that in 1998, she had difficulty standing or sitting for long periods of time and that she had a difficult time driving due to neck pain. A review of the record shows that plaintiff was diagnosed with chronic cervical disc herniations at three levels in October of 1996. Despite these problems, plaintiff was able to travel for one month in July of 1997, and to take a trip to California for two weeks in November of 1997. (Tr. 266-267). In June of 2001, plaintiff reported to Dr. LoCoco that while going through a cavern she had to stoop and look up which caused her neck to pop out of place. (Tr. 263). Furthermore, in a Supplemental Interview Outline dated April 16, 2003, plaintiff reported that she had some limitations but was still able to take care of her personal needs, do some household chores, shop and do errands, prepare meals, watch television, listen to the radio and read. This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain prior to her date last insured. See *Cruze v. Chater,* 85 F.3d 1320, 1324 (8th Cir.1996) (mowed lawn, shopped, odds jobs and visits town); *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322

AO72A
(Rev. 8/82)

Further, the ALJ also considered the testimony of plaintiff's husband. After hearing his testimony, however, the ALJ properly concluded that his testimony was not fully credible because he had an interest in the outcome of the case. As the testimony of family members and friends need only be given consideration and need not be considered credible, the ALJ properly discredited the testimony of the witness. *Lawrence v. Chater*, 107 F.3d 674, 677 (8th Cir. 1997).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends the ALJ erred in findng plaintiff able to perform a significant range of light work. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

12

functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's examining physicians placed no restrictions on her activities prior to March 31, 2000. In making this RFC determination, the ALJ notes Dr. LoCoco's attending physician statement dated February 11, 2004, finding plaintiff could perform less than sedentary work and Dr. Bell's letter dated February 26, 2004, indicating he agreed with Dr. LoCoco's February assessment. (Tr. 315). The ALJ found Dr. LoCoco's statement was inconsistent with his own treatment notes and the evidence of record as whole. *Forehand v. Barnhart,* 364 F.3d 984, 986 (8th Cir.2004) ("A treating physician's opinion is generally entitled to substantial weight, ... [but it] must be supported by medically acceptable clinical or diagnostic data."); *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (while treating physicians' opinions are ordinarily entitled to great weight, they are not conclusive and must be supported by medically acceptable clinical or diagnostic data). Dr. LoCoco did find plaintiff had some limitations in February of 2004, due problems associated with her cervical spine and RSD of her left foot. (Tr.310-314). However, this was almost four years after plaintiff's insured status had expired and over two years since he had last treated plaintiff. Dr. LoCoco's treatment notes during the relevant time period report plaintiff was experiencing pain and that she should undergo surgery; however, he did not limit plaintiff's activities prior to March 31, 2000. The record also indicated plaintiff sought treatment from Dr. Bell for the first time in January of 2003. At that time she reported that her pain

13

medication usually worked out well and that she was "happy with her pain control." Therefore, based on all of the evidence contained in the file, we see no reason why plaintiff would have been unable to perform the RFC determined by the ALJ prior to and up until the expiration of her insured status.

Finally, we look to the ALJ's determination that plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff is not disabled as she was able to perform her past relevant work as an insurance agent prior to the expiration of her insured status. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 29th day of September 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)

AO72A
(Rev. 8/82)